## Case No. 453.

ANONYMOUS.

[13 Int. Rev. Rec. 78.]

Circuit Court, S. D. New York. Dec. 29, 1870.

[The case reported without title in 13 Int. Rev. Rec. 78, is the same as In re Nicolas, Case No. 10, 256.]

---

## Case No. 454.

ANONYMOUS.

[14 Int. Rev. Rec. 103.]

[The case reported without title in 14 Int. Rev. Rec. 103, is the same as The Sunnyside, Case No. 13,622.]

---

## Case No. 455.

ANONYMOUS.

[16 Int. Rev. Rec. (1872) 92.]

District Court, S. D. New York.

CUSTOMS DUTIES—SMUGGLING—INFORMER'S SHARE.

[A person who gives important information to revenue officers, and thereby prevents the smuggling of goods, is entitled to the informer's share of the forfeiture, although the information was given while he was under arrest for suspected complicity in the smuggling.]

[See note at end of case.]

[At law. Suit by the United States against Beare, a member of the importing firm of Smith & Beare, to recover the value of smuggled goods. Beare was also arrested criminally, but by a compromise all proceedings in both suits were stopped. Sisson and the agents of Col. Howe filed claims as informers, which were referred to a commissioner. Heard on exceptions by Sisson to the commissioner's report. Sustained.]

M. M. Budlong, for Sisson.
Stanley & Brown, for Colonel Howe.
Before BLATCHFORD, District Judge.

This is a proceeding by rival claimants to recover the informer's share of moneys paid into the United States court in settlement of a suit under the customs laws. It appears that in March, 1871, the store of Smith & Beare, importers at Nos. 88 and 90 Leonard street, was seized by Colonel Howe's special agents. The books and papers of the firm were examined, and goods of the value of $9,000 were seized and taken to the custom house. Colonel Howe's agents claimed to be the informers, and filed a claim for the informer's share in the value of the goods. In May, a Mr. Sisson was arrested by the special agents being suspected to have been concerned with Smith & Beare in the transactions. Sisson gave the agents certain information, which he claimed was the cause of the recovery of the money, afterwards received on compromise. Suit was then brought against Beare for $100,000, the supposed value of the goods supposed to have been smuggled by the house. He was arrested and held to bail in the sum of $50,000, and was also arrested criminally and held to bail in $15,000. While the proceedings were pending, Smith & Beare proposed settlement, and offered to pay $14,000 if the government would stop all proceedings. The offer was accepted by the United States district attorney under the advice of the secretary of the treasury at Washington, and the money was paid into court in November last. Sisson then filed a claim as informer, and petitioned to the court to be declared such, and entitled to the informer's share, which was $3,500. Colonel Howe's agents also claimed it, and Judge Blatchford referred the case to Commissioner Osborn to take testimony and report who was entitled to the informer's share. The commissioner filed his report in April, reporting in favor of the special agents. Sisson's counsel filed exceptions to the commissioner's report, and the case came on for argument on the exceptions. It was claimed by Colonel Howe's counsel that, assuming Sisson's information to have been important, Sisson being under arrest when he gave the information, was thereby disqualified and could not be adjudged the informer. It was claimed by the other side that the only question under the statute was who gave the information that led to the recovery, and that if it was Sisson's that led to the payment of the money, he was entitled to the informer's share, even if he was under arrest at the time, which was denied. After lengthy argument, Judge Blatchford decided that the commissioner had erred on the law, and that Sisson was entitled to share equally with Colonel Howe's agency. Mr. Stanley, Colonel Howe's counsel, then took out a writ of error to the United States circuit court, but before argument it was amicably adjusted between Mr. Sisson and the special agents, and orders for the discontinuance of the appeal were filed in the United States circuit court this week.

[NOTE. The act to prevent and punish frauds upon the revenue approved March 3, 1863, § 1, (12 Stat. 739,) provides that "this act" shall be construed only to modify, and not repeal, the act of March 1, 1823, (3 Stat. 729, c. 21.) Section 35 of the act of 1823 provides that all penalties and forfeitures incurred thereunder shall be sued for, recovered, distributed, and accounted for in the manner prescribed by Act March 2, 1799, (1 Stat. 627, c. 22.) Section 91 of the act of 1799 (1 Stat. 697) contains the following provision: "All fines, penalties, and forfeitures recovered by virtue of this act (and not otherwise appropriated) shall, after deducting all proper costs and charges, be disposed of as follows: One moiety shall be for the use of the United States, and be paid into the treasury thereof, by the collector receiving the same; the other moiety shall be divided between, and paid in equal proportions to, the collector, and naval officer of the district, and surveyor of the port, wherein the same shall have been incurred, or to such of the said officers as there may be in the said district; and in districts where only one of the aforesaid officers shall have been established, the said moiety shall be given to such officer: provided, nevertheless, that in all cases where such penalties, fines and forfeitures, shall be recovered in pursuance of information given to such collector, by any person other than the naval officer or surveyor of the district, the one half of such moiety shall be given to such informer, and the remainder thereof shall be disposed of between the collector-naval officer, and surveyor or surveyors, in manner aforesaid."]